## BREENE v. CRAWFORD.

No. 24014.   Oct. 1, 1935.

Rehearing Denied Dec. 3, 1935.

Steel & Daugherty, for plaintiff in error.

N. E. McNeill and John W. McCuen, for defendant in error.

PHELPS, J. The plaintiff below, a brick-layer, recovered judgment against the defendant upon the theory that she was negligent in failing to provide him a reasonably safe place to work, by reason of which the scaffold upon which he was standing fell with him, causing permanent injury to his foot.

The defendant owned and was building two new dwelling houses. She made an agreement with the plaintiff whereunder he was to do all of the brick work for $100 and an automobile, and she was to furnish the material and a helper. The evidence reveals that this helper constructed a scaffold which was improperly braced on one end, and when the plaintiff moved down to that end, to lay the bricks, it gave way and fell with him about 12 feet and a large plank struck his foot, inflicting the injury complained of.

The defendant paid the helper, Christenson, by the day, directed him where to get the lumber with which to build the scaffold and told him to be careful to build it in proper shape, so that it would be safe. She was present at the scene of the building nearly every day and testified that several times she inspected the scaffolding and that she told the plaintiff and Christenson on the day of the accident that the scaffold was unsafe. This they denied at the trial. The defendant also employed other workmen on the job, and generally directed the progress of the building. There is a conflict in the evidence as to whether plaintiff had any part in the building of the scaffold, his own testimony being that his activities in that respect were limited to telling the other workmen where he wanted the scaffold put.

Defendant's first contention is that the court erred in refusing to give the following instruction to the jury, which was requested by her:

"You are instructed that if you find and believe from a preponderance of the evidence that Bill Taylor did any work on the scaffolding and that such work was done without the consent or authority of the defendant, then you cannot hold the defendant liable for any act or omission of Bill Taylor."

Taylor was a colored general handy man employed by the defendant, who worked around her home and in the yard. Her home was near the two dwellings under construction. It appears that when he was not busy at the defendant's home he would sometimes go over to the houses under construction and there help anyone who desired his assistance. Taylor and the defendant both testified that the defendant had told him he could help the carpenter and other workmen, but not to help in the brick work.

The facts and evidence did not warrant the requested instruction. There was no evidence of "any act or omission of Bill Taylor." While there was some evidence that Taylor did assist Christenson in erecting the scaffold, the evidence is overwhelming to the effect that Christenson had entire charge and control thereof, and the fair inference is that the colored servant did nothing except those incidental and occasional things which Christenson or the other men told him to do. The absence of the proper cross-brace in the scaffold was due to Christenson's own failure to put it there, and he so testified. Christenson was the defendant's servant. When he directed Taylor to help him, and Taylor then did the things that he was directed to do, the master was responsible therefor. We cannot say that the court erred in refusing to give the instruction.

The defendant's second proposition is that the court erred in giving instruction No. 4, as follows:

"You are further instructed that the law of this state provides that all scaffolds, hoists, cranes, stays, ladders, supports or other mechanical contrivances erected or constructed by any person, firm or corporation in the state, for use in the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct, steel tank, stand-pipe or other structure, shall be erected and constructed, in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to life and limb of any person or persons employed or engaged thereon, or passing under or by the same, and in such manner as to prevent the falling of any material that may be used or deposited thereon."

Defendant states that there is no evidence that the defendant was required under her contract with the plaintiff to construct the scaffold. This contention can be disposed of with the mere observation that all of the evidence indicates that, regardless of whether she was required under the contract to build

the scaffolding, she built it. In building it she furnished all of the material and directed her servants Christenson and Lampkin to construct it properly. She frequently inspected the scaffold. Assuming, without deciding, that she was under no obligation to build the scaffold, the evidence clearly indicates that she voluntarily assumed that function, and therefore she may not escape the consequences of her own negligence because of the contention that she was not required by the terms of the contract to undertake the erection of said scaffold. The law imposes upon the master the duty of providing the employee with a safe place to work. The instruction is in almost the same language as section 10886, O. S. 1931, imposing upon those in charge of construction of houses the duty described in the instruction.

The next proposition advanced by the defendant is that:

"The court should have instructed the jury that the plaintiff was an independent contractor."

Entirely aside from the fact that the defendant did not request the court to give such instruction, we think it would have been improper even had it been requested. The court did instruct the jury as to the law of independent contractors, and left the issue for the jury's determination. We think that this was proper. While the fact that one is to be paid a lump sum for the accomplishment of a definite result is one of the elements to be considered when determining whether a person is a servant or an independent contractor, the presence of that fact does not necessarily make him an independent contractor.

When determining whether a workman is an independent contractor or a servant we do not look solely to the contract, but extend our inquiry to the practice under that contract. It is undisputed that the defendant personally gave orders concerning the material and erection of the scaffold, and that her servants built the scaffold. Thus to that extent she assumed control and direction of the work. The work included the operations connected with the scaffold, as well as the actual laying of the brick by the plaintiff. Without the scaffold the plaintiff could not have laid the brick. It was a component part of the work. It would therefore have been error for the court to decide as a matter of law that the plaintiff was an independent contractor as to the whole of the work, and even had such in-

struction been requested, it should have been refused.

The concluding proposition of the defendant is that:

"The court erred in assuming that it was the duty of the defendant in this case to comply with the Workmen's Compensation Law of the state of Oklahoma."

The Workmen's Compensation Law was drawn into this case because of the fact that it had been pleaded in the petition that there was a duty upon the defendant to provide compensation insurance, that the defendant had not provided such insurance, and that thus the defense of contributory negligence was not available to the defendant. The court instructed on this issue, to the effect that if the jury found that the plaintiff was an employee and that two or more employees were used in constructing the building, and the defendant did not carry compensation insurance, then under the evidence the defendant could not rely upon the defense of contributory negligence, but that, on the other hand, if the jury believed the plaintiff an independent contractor, the defense of contributory negligence was available to the defendant.

The defendant does not contend that the foregoing is an incorrect statement of law, but bases her entire argument on the assumption that this new building was to be her home, and that the employment contemplated in the Compensation Law is "A trade, business or occupation carried on by the employer for pecuniary gain," quoting section 13350, par. 5, O. S. 1931.

The defendant did not testify that this was to be her home; she did refer to the house once as "this new home", and in the following question was asked, "That new home is directly north of your home where you reside?", and answered "Yes." Many persons and business concerns are engaged in building homes, and they quite commonly refer to them as such. The defendant lived in a very large house, surrounded by a yard of considerable size, and there is no intimation in the record that she intended forsaking it and moving into this smaller and humbler structure. The fact that at one place in the record she referred to the dwelling as "this new home" is not sufficient to warrant the conclusion that she intended it as her home. Had she intended that as a defense, she should have urged it in the lower court. Her defense in that court on this issue was that there were not as many as two or more men employed in the con-

struction. Where a defendant relies upon a certain defense in the trial court, he will not be permitted to shift his ground of defense on appeal, so as to present another defense, not presented nor relied upon in the trial court. Black v. Parisho, 152 Okla. 70, 3 P. (2d) 673.

The judgment is affirmed.

OSBORN, V. C. J., and RILEY, BAYLESS, WELCH, CORN, and GIBSON, JJ., concur. BUSBY, J., dissenting. McNEILL, C. J., not participating.