CITIES SERVICE OIL CO. v. JAMISON, Admr.

No. 29980.   Oct. 7, 1941.

*117 P. 2d 776.*

446

C. B. McCrory, of Okmulgee, and L. L. Corn and F. H. Bacon, both of Bartlesville, for plaintiff in error.

Truman B. Rucker and Clayton B. Pierce, both of Oklahoma City, and Harry Pitchford, of Okmulgee, for defendant in error.

BAYLESS, J. Alexander Jamison, administrator of the estate of Charles Simons, deceased, brought an action, consisting of two counts, for damages for conscious pain and suffering and for death, against Cities Service Oil Company, a corporation. The superior court of Okmulgee county, upon the basis of a jury verdict, rendered judgment for the plaintiff, and the defendant prosecutes this appeal. Defendant filed an amendment to its answer whereby it pleaded the statute of limitations. At the commencement of the trial plaintiff dismissed the count relating to conscious pain and suffering, and thereafter no mention is made of the defense set up in the amendment, but the whole issue resolves around plaintiff's allegations of negligence and defendant's general denial.

The incident out of which the action arises occurred in a room in the waxhouse of defendant's plant at Okmulgee. Certain repairs were in course, and it was necessary to erect a scaffold some seven or eight feet high. The dimensions of the room are not given, nor are all of the dimensions of the scaffold. But from the evidence we gather that the scaffold was more than eight feet long and wide enough for two different crews of men (probably six men in all) to work on. The scaffold apparently had upright posts at each corner, and its floor consisted of 2 x 8 or 2 x 12 boards, nailed or fastened until "these boards couldn't slip." There was no rail or other retaining wall around the scaffold. It is not shown how men got up on it or down from it.

Some effort was made to show that it was erected in a loose manner, but plaintiff's witness completely disproved that notion. That left plaintiff with but two elements of negligence. It is conclusively shown that one post or leg of the scaffold stood very near (a matter of inches) a pump that "pounded" and set up a vibration that in turn was communicated to the post or leg of the scaffold, thereby causing the scaffold to vibrate. It is also shown that a steam pipe passed from the pump upwards through the floor of the scaffold, and that there was a vibration from the steam pipe. It is shown that the "pounding" of the pump was not continuous but intermittent, depending upon the supply of the substance pumped and the stage of the cycle of the pump. The character of the vibration of the steam pipe is not definitely shown, and we do not know whether it was an independent vibration from the pressure of the steam or was a vibration communicated to it by the pump to which it connected.

On the date in question, during the noon hour, when no men were on the scaffold, Simons was standing on the floor of the room, two or three feet from the scaffold, and "a ladder fell from above the scaffold and hit him on the top of the head." It is sufficient to say the evidence supports the jury's

finding that his death years later was the result of this blow.

The ladder was described as a stepladder, having three or four steps and weighing about 25 pounds.

Defendant had a crew of men that worked on the scaffold. An independent contractor had a crew that also worked on the scaffold.

Plaintiff bases his argument of negligence in failing to furnish deceased with a safe place to work upon these factors and argues that the defendant should have known that the vibration occurred, and would cause objects to fall from the scaffold, and should have erected a rail or retaining wall around the edges of the scaffold. In other words, he argues defendant was required to take steps to protect employees from objects falling from the scaffold.

We may say at this point that defendant argues that plaintiff not only failed to show any negligence on the part of defendant, but his evidence establishes that deceased's own negligence caused his death. This latter seems to be based on deceased's position as a superior servant, that is to say, he was in charge of the room where the accident occurred. No implication of responsibility on the part of the deceased for the erection of the scaffold can be permitted, for the evidence shows that it was erected for the master by a crew of workmen supervised by another foreman. Barnsdall Oil Co. v. Ohler, 48 Okla. 651, 160 P. 98. Citing Lambert v. Mississippi Pulp Co., 72 Vt. 284, 47 Atl. 1087, and 39 C. J. 622, § 728, and annotations. In addition to this, there is no proof that deceased was actually in control of this repair work, though there is some evidence that he was in charge of some of the workmen who worked in the room, and that he was familiar with the scaffold and its tendency to vibrate, and the objects upon it. There is no evidence of any act on his part that in anywise caused or contributed to the fall of the ladder.

It is obvious from what has been said that the issues in this case were cast under the common law, with its distinctions, presumptions and rules. However, we have a statute that governs such matters, and we think it is controlling.

The pertinent parts of section 7269, C.O.S. 1921, § 10886, O. S. 1931, 40 O.S. A. § 174, read:

"All scaffolds . . . erected or constructed by any person, firm or corporation in the state, for use in the . . . repairing, alteration . . . of any house, building . . . or other structure, shall be erected and constructed in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to life and limb of any person or persons employed or engaged thereon, or passing under or by the same, and in such manner as to prevent the falling of any material that may be used or deposited thereon. . . ."

We said in New v. Stout, 98 Okla. 177, 224 P. 519:

"Section 7269, C.O.S. 1921, provides: . . . We think this statute is declaratory of the rule and is controlling and does away with the presumptions of custom in this jurisdiction, in all cases like the instant case. It certainly was the legislative intent that this statute should regulate the duty of all builders in this state in the matter of making their . . . contrivances safe for the employees. . . ."

See, also, Mid-Continent Petroleum Co. v. Allen, 110 Okla. 101, 236 P. 426, and Breene v. Crawford, 175 Okla. 186, 53 P. 2d 244.

The statute expressly provides that any scaffold swung or suspended from an overhead support more than 20 feet from the floor shall have, "where practicable," a safety rail or specified construction. Since this scaffold did not come within this definition, the failure to have a rail was not absolute, but was a jury question.

See 39 C. J. 353, § 474, as to the rule at common law, and section 475, as to the rule under statutory regulations.

See, also, 39 C. J. 624, § 729, and its reference to section 646, post. See, also, 18 R.C.L. 596, § 98, note 12, and annotations to which it and supplements refer.

Where the master's duty with respect to scaffolds is prescribed by statute, it is given a much more liberal application in favor of the workmen and those to be protected, and there are no qualifying exceptions or arrangements permitted whereby the master may shift responsibility or escape liability. The language of the statutes is usually such as to define with some certainty the manner in which scaffolds shall be erected. Our statute does this.

The evidence that this scaffold was built in such proximity to the pump and steam pipe that it vibrated, and that it did vibrate, and that it had no guard rail, and that the ladder did fall from it and strike an employee passing by it, was sufficient to make an issue of fact for the jury as to whether defendant had discharged its statutory duty. The language of our statute is that it shall be built to prevent the falling of any material thereon.

Defendant argues that the whole case of plaintiff and the verdict of the jury is based on speculation and conjecture. Viewed in the light of the common-law duty supposed to govern the master's conduct and the plaintiff's right of action in this case, and governed by the decisions cited, there is much that could be said in support of this view. The fact that the master's duty is governed by statute and is absolute, and the further fact that the many qualifying rules applied by the common law have no place in this decision, makes this argument pointless.

Defendant also argues that the court erred in refusing to give certain requested instructions on assumption of the risk and contributory negligence. In this argument defendant recognizes that these defenses are affirmative and must be pleaded, as pointed out by plaintiff (Shunkamolah v. Delco, 131 Okla. 272, 268 P. 270, and other cases), and admits it did not plead them. But defendant points to Colonial Refg. Co. v. Lathrop, 64 Okla. 47, 166 P. 747, which it says holds that if these issues are made to appear by plaintiff's evidence, it is proper to instruct on them even though not pleaded by defendant. In the case before us there is nothing in plaintiff's evidence that raises such issues.

Defendant's argument based upon the common-law rule relating to a master's duty with respect to furnishing a safe place to work on new construction or transitory repair risks is beside the point, since the master's duty here is governed by statute.

Defendant's contention of error based on the admission of hearsay statements by deceased of aches and pains has some merit. The attorneys were not always precise in forming questions so as to differentiate between complaints of present pain and the relation of aches and pains previously suffered. Nor was the trial court always careful in excluding such evidence as was inadmissible. But we are convinced there is sufficient competent evidence on this issue, and we do not feel that the admission of the incompetent evidence complained of requires a reversal of the judgment.

Judgment affirmed.

CORN, V. C. J., and RILEY, OSBORN, GIBSON, HURST, and ARNOLD, JJ., concur. WELCH, C. J., and DAVISON, J., absent.