**Charles HUNT, Plaintiff in Error,**

**v.**

**The FIRESTONE TIRE & RUBBER CO., General Motors Corporation (Pontiac Motors Division) and Bee Line Motors Company, Defendants in Error.**

**No. 41618.**

Supreme Court of Oklahoma.

Dec. 23, 1968.

James S. Steph, Rainey & Barksdale, Okmulgee, for plaintiff in error.

Lytle, Soule & Emery by John C. Harrington, Jr., Oklahoma City, for defendant in error, The Firestone Tire & Rubber Co.

Covington & Gibbon, Richard D. Gibbon, John S. Morgan, Tulsa, for defendant in error, Bee Line Motors Co.

Rhodes, Hieronymus, Holloway & Wilson, Bert M. Jones, Tulsa, for defendant in error, General Motors Corp. (Pontiac Motor Div.)

DAVISON, Justice.

Charles Hunt (plaintiff below) appeals from a judgment rendered on a jury verdict in favor of Firestone Tire & Rubber Co., (defendants below) in an action to recover for personal injuries suffered by plaintiff when an alleged defective tire manufactured by Firestone and placed on a new Pontiac automobile by General Motors Corporation, blew out and caused the automobile plaintiff was driving to run off the highway. Plaintiff also appeals from a further adverse judgment, denying him any recovery against the other defendants, when the trial court sustained motions for directed verdicts made by the defendant General Motors Corporation, manufacturer of the Pontiac automobile, and by the defendant Bee Line Motors Company, the automobile dealer that sold the new 1964 Pontiac automobile to the plaintiff with the alleged defective tire thereon.

The accident took place about 2:30 A.M. on February 22, 1964, 7.9 miles north of Okmulgee, Oklahoma.

Plaintiff's petition alleged the facts of his purchase of the new car from Bee Line on December 3, 1963, which had been manufactured by General Motors and which was equipped with tires manufactured by Firestone. Plaintiff alleged that at the time of purchase the right front tire had some cuts on it, and when this was called to the attention of Bee Line he was advised by Bee Line, for themselves and as agents for the other defendants, that the tire would be replaced and the cuts were not of such nature as to create any danger from the use of the tire; that at the request of Bee Line the plaintiff contacted agents of Firestone to obtain a replacement for the tire and was again advised the cuts were not such as to create any danger from the use of the tire; that plaintiff relied upon the representations of the defendants and continued to drive the car until February 23, 1964, when the tire ruptured as a result of its defective condition causing the car to leave the highway and injuring plaintiff. Plaintiff alleged the defendants were negligent, (1) in selling plaintiff a defective automobile which they knew or should have known was dangerous to drive, (2) in advising plaintiff the automobile was safe to

drive in its defective condition when they knew or should have known was dangerous to drive in such condition, and (3) in failing to replace the tire immediately upon ascertaining its defective condition, and prior to its sale to plaintiff. Plaintiff then alleged his injuries and pain and loss of earnings and prayed for damages.

Firestone filed a verified answer consisting of a general denial, a specific denial that plaintiff ever contacted any of its agents or that those contacted were its agent, a plea of contributory negligence on the part of plaintiff and a denial of any negligence by Firestone, but if Firestone was negligent then such negligence was not the proximate cause of the accident and plaintiff's injuries.

The answer of Bee Line was a general denial, a specific denial of any negligence on its part, and a denial of any duty owed to plaintiff in any of the incidents set forth in the petition. The answer denied any warranty existed between Bee Line and plaintiff in that the written warranty executed at the time of the sale of the automobile specifically stated no warranty was given as to the tires. Bee Line alleged the sole and proximae cause of the accident was the failure of plaintiff to exercise good judgment in the circumstances existing just prior to the accident, and further that the co-mingling of plaintiff's own negligence in certain respects caused the accident, and that plaintiff assumed all of the risk by his operation of the vehicle with the knowledge he had.

General Motors answered with a general denial, and alleged plaintiff's injuries were caused solely and proximately by his own negligence in certain alleged respects, including a non-stop drive to Chicago, Illinois, and a non-stop return to Okmulgee, Oklahoma, without sleep, whereby plaintiff either fell asleep or became inattentive and drove off the road, and further alleging that if there was any defect in the tire, which was denied, it was patent and obvious and known to plaintiff and that he assumed the obvious risks inherent in such non-stop

drive. General Motors further alleged the sole and proximate cause of the accident was plaintiff's own negligence and assumption of risk.

As stated above, the trial court directed the jury to return verdicts in favor of Bee Line and General Motors. In submitting the case to the jury, as between plaintiff and Firestone, the lower court gave instructions on the propositions of contributory negligence and assumption of risk by the plaintiff. Plaintiff preserved his exceptions to these instructions.

Plaintiff insists the lower court erred, (1) in instructing the jury on the proposition of assumption of risk, when Firestone's answer did not plead that defense, and, (2) error of the court in directing verdicts for Bee Line and General Motors. Our disposition of such contentions requires a narration of pertinent portions of the evidence.

Plaintiff testified that he bought the new 1964 General Motors Pontiac automobile, with five Firestone tires, from Bee Line Motors Company in Okmulgee, Oklahoma, on December 3, 1963, and almost immediately drove it out to have it examined by his mechanic friend (L. Smith); that they drove around and Smith noticed a bump in a tire, and upon examining the right front tire, they found a couple of scratches or cuts in the side of the tire, "just more or less looked like where barbed wire had hung it or they damaged it unloading it off the shipping vehicle," and a place in the tire tread where "a piece of rubber had been chawed out;" and that Smith told him "You got a bad tire on here" and advised plaintiff to take it back. Smith testified for plaintiff concerning discovery of the two cuts on the side of the tire and a "scooped out place on the top," and told plaintiff to take it back because the tire might have been faulty and would give no service and because he thought the tire would not last long. Plaintiff testified he was concerned about the tire, that there was something wrong with it, and he went right back to the dealer and showed the tire to the salesman (Waters) of that de-

fendant and asked for a new tire, and Waters stated the tire was probably damaged in unloading the automobile and he (Waters) thought it would be safe to drive on, and that Waters "never did say definite whether it was safe," but said "I think it will be okay;" that Waters said he did not have that size tire in stock, but he would get a new tire for plaintiff; and Waters explained to him that General Motors did not warrant, the. tires on,.the automobiles, and sent him to York's service station where Firestone tires were sold. Plaintiff testified he then went to the York station on December 3, and December 4, where he was told by the station attendant that the tire was defective, but that this size tire was not in stock and would be ordered, that the attendant stated he thought the tire would be safe, and gave plaintiff a Firestone certificate of tire guarantee for use in securing an adjustment on any replacement of the tire. Plaintiff's testimony reflects that he went back to Bee Line on December 4, 1963, where he was told to come back the following Monday, and that he did return and was told the tire had not been received. From our examination of the record it appears that plaintiff did not again contact Bee Line. He further testified that he continued to drive the car and during the next two and one-half months (approximately) he repeatedly called at the York station and also stopped at service stations bearing the Firestone emblem in Tyler and Dallas, Texas, in Oklahoma City and Tulsa, Oklahoma, and in Chicago, Illinois, with no success in finding a replacement for the tire.

Plaintiff's testimony shows that in search of a truck-driver's job he left Okmulgee, Oklahoma, on Friday afternoon (between 12:00 and 2:00 P.M.) and drive non-stop to Chicago, Illinois (about 800 miles), arriving Saturday morning about daybreak, and left Chicago about noon of Saturday, without having slept, for the return trip to Okmulgee, with stops only to eat, to put the spare tire on a rear wheel, and to sleep about 15 or 25 minutes outside of Joplin, Missouri. He stated that Sunday morning (about 2:30 A.M., February 23, 1964), at a point about 8 miles from Okmulgee, when the car had a total mileage of about 8000 miles on it, the said right front tire blew out and caused the car to swerve to the right and leave the highway and whereby plaintiff was injured. On cross-examination plaintiff stated "I am not going to exactly say whether I was sleepy or not," that he was not asleep at the time of the accident, but admitted he was sleeping an hour or hour and a half or two hours before the accident. He was removed by ambulance to a hospital. Plaintiff testified he had driven automobiles for about 17 years and had experience as a truck driver and had a. chauffeur's license.

A State Highway Patrolman arrived at the location of the accident about 30 minutes after it occurred. He testified for defendants that there was a complete absence of any evidence or marks upon the highway that were generally present when a tire blew out.

The two men who operated the wrecker that pulled the car on to the highway testified positively the right front tire was not flat, but that the left front tire was flat and they changed the left rear wheel and tire to that location, and then towed the car into Okmulgee on its front wheels.

As stated above, plaintiff contends the trial court improperly instructed the jury on assumption of the risk by plaintiff when Firestone's answer failed to plead this defense.

▮ Plaintiff cites Shunkamolah v. Delco, 131 Okl. 272, 268 P. 270, and other cases, for the proposition that neither the defense of contributory negligence nor that of assumption of risk is available to a defendant who fails to plead these defenses. We do not dispute this general rule of law. However, the rule and exception thereto is that contributory negligence and assumption of risk, to be available to the defendant, must be pleaded, unless such contributory negligence and assumption of risk appear from the allegations of the plaintiff's petition, or

unless the plaintiff's own evidence raises the presumption of contributory negligence or assumption of risk. Colonial Refining Co. v. Lathrop, 64 Okl. 47, 166 P. 747, L.R.A. 1917F, 890; Okmulgee Supply Co. v. Rotman, 144 Okl. 293, 291 P. 1; Cities Service Oil Co. v. Jamison, 189 Okl. 445, 117 P.2d 776; S. H. Kress & Co. v. Maddox, 201 Okl. 190, 203 P.2d 706; 65A C.J.S. Negligence § 198(2) (c).

 It is our opinion that the above statement of plaintiff's evidence raises the presumption of assumption of risk on the part of plaintiff. The described defective condition of the tire was obvious and plaintiff's attention was called to the defects and to the seriousness thereof within a matter of an hour or more after he received the automobile. By his own admission he was concerned about the tire, that there was something wrong with it. In the face of this knowledge and concern, and regardless of his years of driving and his experience as a truck driver, he continued to drive on the defective tire for 8000 miles without substituting the spare tire. We believe it would be a reasonable conclusion that plaintiff knew or was charged with knowledge and appreciation of the danger and thereby the doctrine of assumption of risk was applicable under plaintiff's evidence. S.H. Kress & Co. v. Maddox, supra.

 Plaintiff makes the further contention in his reply brief that the instruction on assumption of risk should not have been given because that doctrine arises out of contractual relations, and is separate and independent from the defense of "contributory negligence," citing Chicago, R. I. & P. R. Co. v. Rogers, 60 Okl. 249, 159 P. 1132. The suggestion that there were no contractual relations of any kind between plaintiff and Firestone is erroneous. The written new vehicle warranty that accompanied the sale of the car stated that no warranty was made by General Motors as to the tires and generally informed plaintiff as to the tire manufacturer's guarantee concerning the tires. Plaintiff was given a Firestone certificate new tire guarantee, which was introduced in evidence by plaintiff. There was a contractual relationship between plaintiff and Firestone.

It is our conclusion that the trial court was justified in instructing the jury on assumption of risk.

We are of the opinion and hold that under the facts and circumstances herein presented the jury was justified in rendering its verdict in favor of the defendant, Firestone Tire & Rubber Co. The judgment is free of error and is affirmed.

Plaintiff contends the trial court erred in directing the jury to return verdicts in favor of Bee Line and General Motors.

It appears from statements of the trial Judge that he was of the opinion there was no issue to present to the jury, as to these defendants, because of the remoteness of the accident from the sale of the automobile and the representations made by Bee Line's salesman.

Plaintiff cites Pryor v. Lee C. Moore Corporation, 262 F.2d 673 (10th Cir. 1959), as authority that the lapse of time a manufactured or assembled appliance is in use is a matter for consideration of the jury in determining liability or non-liability for injury arising from defects in the appliance. In that case the court held that use of the mast or derrick of an oil drilling rig for a period of 15 years did not absolve the manufacturer from liability for injury caused when a weld at the foot of a derrick leg broke or failed and the derrick collapsed while being used in a pulling operation. The case is not applicable because the defect was latent, whereas, in the present case the defect in the tire was both obvious and known to plaintiff.

Plaintiff also cites Hembree v. Southard, Okl., 339 P.2d 771, in which we considered the duties and liability of a used car dealer when a leaky brake cylinder in the front wheel of a car caused the wheel to lock and the car to turn over and injure the driver. The decision is not in point for the reason that the alleged defect was hidden, whereas, in the present case the defect

in the tire and the danger was obvious and known to plaintiff.

It is our opinion that the scratches or cuts upon the side of the tire merely constituted a condition by which an injury was possible. Plaintiff's evidence showed that more than two and one half months elapsed, during which plaintiff drove the car about 8000 miles, before the tire allegedly blew out. Under these circumstances our holding in Munroe v. Schoenfeld & Hunter Drilling Co., 178 Okl. 149, 61 P.2d 1045, is applicable. Therein we held that the maintenance of a runway extending from a derrick without the customary steps was not the proximate cause of injury to a workman who jumped down from the runway. Therein we quoted with approval as follows:

"The proximate cause of any injury must be the efficient cause which sets in motion the chain of circumstances leading to the injury; if the negligence complained of merely furnished a condition by which the injury was possible and a subsequent independent act caused the injury, the existence of such condition is not the proximate cause of the injury."

The decision also states:

"We believe, in the light of such a test as applied to the fact situation in this case, that, even if the omission to furnish these steps was negligence, the subsequent and independent act of the employee was the proximate cause of his injury."

See also Myers v. Luttrell, Okl., 373 P.2d 22.

The lower court did not err in directing verdicts for Bee Line and General Motors.

The judgment of the trial court is affirmed.

IRWIN, V. C. J., and WILLIAMS, BLACKBIRD, BERRY, LAVENDER and McINERNEY, JJ., concur.

JACKSON, C. J., concurs in result.

HODGES, J., dissents.