2017 OK CIV APP 9

TINKER FEDERAL CREDIT UNION, Plaintiff,

v.

Jimmy D. GRANT, Defendant/Appellant,

Bishop L. Berryhill and Camden L. Berryhill, Defendants/Appellees,

and

Kenneth Boulware, Sheila Mosley-Boulware and Suzann M. Grant, Defendants.

Case Number: 114176

Court of Civil Appeals of Oklahoma, Division No. 4.

Decided: 08/16/2016

Mandate Issued: 02/07/2017

Steven L. Parker, Tecumseh, Oklahoma, for Defendant/Appellant.

Luke Gaither, GAITHER LAW OFFICE, Henryetta, Oklahoma, for Defendants/Appellees.

JANE P. WISEMAN, PRESIDING JUDGE:

¶1 Jimmy D. Grant appeals a trial court order (1) finding he improperly converted funds from a guardianship estate to his own account, and (2) directing payment of the funds to the beneficiaries of the ward's account from which the funds were taken. We are asked to address whether this resulted from trial court error or an abuse of discretion. We find it did not and affirm its decision.

### FACTS AND PROCEDURAL BACKGROUND

¶2 On January 22, 2014, Grant was appointed guardian of Kenneth Lee Boulware. Sheila Mosley-Boulware had previously acted as Boulware's guardian. On January 7, 2015, Tinker Federal Credit Union (TFCU) filed a petition for interpleader stating Boulware had checking and savings accounts at TFCU and two minor children, BLB and CLB, were named as beneficiaries of the accounts. TFCU alleged that, since the time Grant presented the guardianship order to TFCU, he attempted to amend the beneficiary desig-

nation for Boulware's accounts, but TFCU refused to change the beneficiary designations. TFCU alleged that after it denied Grant's request, "Grant transferred a substantial portion of the assets held in Kenneth Lee Boulware's accounts into accounts in Jimmy D. Grant's name alone" and designated Suzann M. Grant as the beneficiary. Due to the conflicting claims for the money from the accounts, TFCU asserted it "cannot make payment or designation of the money and accounts without assuming responsibility of determining doubtful questions of fact and law" and being subject to lawsuits. TFCU asked that it be allowed to pay the money to the clerk of court.

¶3 In its January 7, 2015 order, the trial court directed Grant, Sheila Mosley-Boulware, BLB, CLB, and Suzann Grant to respond to TFCU's interpleader request and state what claim they have to the accounts or against other parties. A hearing was set on February 9, 2015, for these defendants to appear and show cause: (1) why TFCU should not be discharged from the action after paying the funds into court; (2) why the "defendants should not be permanently enjoined from making any further claim against TFCU related to the referenced account"; and (3) why the court should not award TFCU its costs and attorney fees.

¶4 Sheila Mosley-Boulware answered stating she "has no objection to the money being interplead ... for the Court to determine how the funds should be distributed" or for TFCU to be discharged once the funds were deposited with the court.

¶5 In his answer, Grant alleged that he is Boulware's guardian; Boulware made a will (attached to Grant's answer showing that it had been witnessed by Grant's attorney and presented to a judge); all accounts remain in Boulware's name and would remain so until his death; and Grant had no objection to the discharge of TFCU. He asked to "be able to transfer monies within [TFCU] as he sees fit subject to supervision by [the court]."

¶6 Boulware's will dated June 24, 2014, leaves his two children $10 each. He leaves Tiffany Jo Berryhill, as trustee for CLB and BLB, $10,000 for each child for his edu-

cation, to be held in trust until his 22nd birthday. The will states that the trust funds have been established at TFCU. Boulware devises specific real estate to Grant, leaves him a judgment recorded in Okfuskee County, and bequeaths Grant the remainder and residue of his estate.

¶ 7 Suzann Grant filed an answer stating she is Grant's daughter, she is aware that Grant made her the beneficiary of Boulware's accounts, she makes no claim to any of the monies and does not expect to do so, and she has no objection to the discharge of TFCU. She asked the court to dismiss her from the lawsuit.

¶ 8 Tiffany Robertson[1], as mother and next friend of BLB and CLB, filed an answer and a cross claim against Grant admitting TFCU's claims and alleging Grant abused his power and breached his fiduciary duty to Boulware when he tried to change the beneficiaries on Boulware's bank accounts. Robertson asked that Grant be removed as guardian and enjoined from any further use of Boulware's assets until his removal.

¶ 9 In its order on the interpleader petition, the trial court directed TFCU to deposit the contents of all of Boulware's accounts into the trust account of BLB's and CLB's attorney, Luke Gaither. After depositing the funds, TFCU was to be discharged from the action. Pursuant to the order, TFCU deposited $ 165,621.48 into Gaither's trust account. The court awarded $ 1,000 to the law firm representing TFCU to be deducted from the funds deposited in Gaither's account, and ordered Grant to retain two of Boulware's social security checks totaling $ 6,000 plus $ 1,000 from the funds deposited in Gaither's account. Grant was ordered to pay an outstanding attorney fee of $ 2,500 Boulware owed to Jeremy Pittman arising from Boulware's previous divorce action with Sheila Mosley-Boulware.

¶ 10 According to Grant, Boulware died on March 10, 2015. On April 16, 2015, Grant filed a final report on Boulware's guardianship. He claimed in the report that Boulware directed him to transfer the money from the checking account which listed BLB and CLB as beneficiaries "to a different account where it would not be subject to the payment on death beneficiary clause." He stated that on November 18, 2014, he transferred $ 95,-291.87 to an account so CLB and BLB "would not be the beneficiaries on a payment on death account."

¶ 11 A hearing on the final account was held on May 20, 2015. Grant testified that when the court appointed him guardian, Boulware was going through a divorce from Sheila Ann Mosley. Grant said that while he was taking care of business at TFCU related to the divorce, he learned that BLB and CLB "were beneficiaries of [Boulware's] entire account." Grant stated that Boulware had three accounts. He claimed he had a conversation with Boulware about the accounts, and as a result of that conversation, Grant talked to a TFCU representative who told him BLB and CLB "were beneficiaries over the entire checking and everything." Grant "asked her about how we go about to get what [Boulware] wanted done, and she said he would have to come in and do it." Grant testified, "I went back later and found out that I could withdraw money out of the account as long as I left some in the account for the boys, which I did." Grant stated he left $ 30,000 for the boys. He claimed:

> I transferred the rest into another account with, it was supposed to have been headed just like the old account with a different beneficiary. And the lady that fixed it out did not put Boulware's own name on it, and I asked her why. I said Mr. Boulware's name is not on here, and she said I can't put it on, I did not ask her a question of why or when.

He acknowledged his name was on the account.

¶ 12 Grant told the court that he discovered the content of Boulware's will the same day he passed away, March 10, 2015. He stated Boulware "probably made fifteen or twenty [wills] in the last fifteen years [he has] known [Boulware]." Grant did not know exactly how much Boulware left BLB and CLB, but Boulware "always told [Grant] he left them fifteen thousand dollars apiece"

1. Tiffany Robertson and Tiffany Jo Berryhill appear to be the same person.

which is "the reason [Grant] left thirty thousand dollars with them being the full beneficiaries on the death beneficiary, [so that] they could get them right at his death time."

¶ 13 On cross-examination, Grant testified he did not know he was "practically the sole beneficiary of this estate until after Mr. Boulware's death." He stated that Boulware told him to change the beneficiary on the TFCU account and to designate Grant's daughter, Suzann Grant, as the beneficiary. In his last two years, Boulware was in a nursing home, and Grant's sister lived at Boulware's farm and acted as a "sitter." Grant's brother also lived in Boulware's former home and the two "have cleaned and taken care of the place and kept it up for the rent."

¶ 14 Grant acknowledged there were no beginning account balances listed in the accounting he provided the court. The court questioned Grant about the amounts he charged for services he provided for Boulware. The court refused to approve the final accounting because "[g]uardians are not allowed to charge for things" for which Grant charged Boulware because "[g]uardians are paid by statute."

¶ 15 Arlene Gregg, a member service officer for TFCU, testified that she talked to Boulware about his accounts and Boulware told her he wanted to leave BLB and CLB $ 10,000 each. On cross-examination, she testified that at some point, the transactions by Grant "raised a red flag." When Grant moved the funds from one account to another, someone noticed and attorneys for TFCU then filed the interpleader action. When asked about Boulware by the court, Gregg stated she believed he was capable of managing his own affairs and "[h]e didn't have anyone speak for him" because "[h]e spoke for himself." On cross-examination, when asked if Boulware "knew how to change his beneficiary on the payable on death account," Gregg replied, "He would know how. He's done it before."

¶ 16 The journal entry of judgment filed July 14, 2015, in part provides:

2. All funds which are the subject of this action were improperly converted from the Guardianship estate into account(s) in the Guardian's name. Such improper conversion caused the Payable On Death beneficiaries of the Ward's account, [BLB] and [CLB] (minor children), to be excluded as beneficiaries while the Ward was incapacitated.

3. The transfer by the Guardian from the Ward's account to the Guardian's account was an improper transfer by a fiduciary.

4. [BLB] and [CLB] are the legal and rightful owners of all funds which were contained in the Ward's account prior to the Guardian's withdrawal of said funds. The Ward is now deceased, and all funds held in the Gaither Law Office Trust Account pursuant to this Court's previous order may be paid to [BLB] and [CLB].

¶ 17 Grant appeals.

## STANDARD OF REVIEW

¶ 18 We will reverse an order in a guardianship case "only if it is clearly against the weight of the evidence or contrary to law." *In re Guardianship of Holly*, 2007 OK 53, ¶19, 164 P.3d 137. Using this standard, we will review the record for an erroneous interpretation or application of the law or for an abuse of discretion.

## ANALYSIS

¶ 19 Grant asserts it was error to award the checking account to BLB and CLB. First, he claims there was no evidence that there was a payable on death account. This question does not appear to be disputed because in the trial court proceedings, Grant himself acknowledged the account was a payable on death account. Grant stated in his final report as guardian that Boulware directed him "to transfer the money to a different account where it would not be subject to the payment on death beneficiary clause." Grant claimed he transferred $ 95,291.87 "to a different account where [BLB] and [CLB] would not be the beneficiaries on a payment on death account." He also testified he left $ 30,000 in the TFCU account because BLB and CLB were "the full beneficiaries on the death beneficiary."

■ ¶ 20 "Parties to an action on appeal are not permitted to secure a reversal of a judgment upon error which they have invited and acquiesced in, or to assume an inconsistent position from that taken in the trial court." *Union Texas Petroleum v. Corporation Comm'n of the State of Oklahoma*, 1981 OK 86, ¶36, 651 P.2d 652. The Supreme Court explained:

> The rule emanates from the very heart of the purpose served by an appeal. In *Breene v. Crawford*, 175 Okl. 186, 53 P.2d 244 (1935), the Court held that a defendant will not be allowed to shift his ground of defense on appeal in order to present another defense not presented nor relied upon in the trial court. To allow such a traverse in theory at the appellate level thwarts the very basis of the appellate process. The purpose of an appeal is not to present an opportunity for a trial de novo, but to review the correctness of the rulings made upon the arguments of the trial court. The parties to an action, having presented their case for defense to the trial court upon a certain theory, are bound thereby and will not be permitted to change the theory of the case upon appeal.

*Id.*

■ ¶ 21 Grant's claim that the account naming BLB and CLB as beneficiaries was not a payable on death account is clearly inconsistent with his position taken at trial. Although Grant now complains there is no evidence that the accounts were payable on death, he asserted that the accounts were payable on death accounts in the guardian's final accounting he submitted to the court. He also testified that TFCU told him the two boys were "beneficiaries of [Boulware's] entire account," "over the entire checking and everything," and that Boulware had three accounts.[2]

¶ 22 Title 6 O.S.2011 901 addresses "payable on death" accounts and provides in part as follows:

> A. When a deposit has been made or shall hereafter be made in any bank in the names of two or more persons, payable to any of them or payable to any of them or

the survivor, such deposit, or any part thereof, or any interest thereon, may be paid to either of the persons, whether one of such persons shall be a minor or not, and whether the other be living or not; and the receipt or acquittance of the person so paid shall be valid and sufficient release and discharge to the bank for any payment so made.

> B. 1. When a deposit has been made or shall hereafter be made in any bank using the terms "Payable on Death" or "P.O.D.", such deposits shall be payable on the death of the account owner to one or more designated P.O.D. beneficiaries, or to an individual or individuals named beneficiary if living and if not living, to the named estate of the beneficiary, notwithstanding any provision to the contrary contained in Sections 41 through 57 of Title 84 of the Oklahoma Statutes. Each designated P.O.D. beneficiary shall be a trust, an individual, or a nonprofit organization exempt from taxation pursuant to the provisions of the Internal Revenue Code, 26 U.S.C., Section 501(c)(3).

> 2. A deposit account with a P.O.D. designation shall constitute a contract between the account owner, (or owners, if more than one) and the bank that upon the death of the last surviving owner of the account, and after payment of account proceeds to any secured party with a valid security interest in the account, the bank will hold the funds for or pay them to the named primary beneficiary or beneficiaries if living. If any named primary beneficiary is not living, the share of that beneficiary shall instead be held for or paid to the estate of that deceased beneficiary unless contingent beneficiaries have been designated by the account owner as allowed by paragraph 4 of this subsection.

> . . . .

> 10. No change in the designation of a named beneficiary shall be valid unless executed by the owner of the fund and in the form and manner prescribed by the bank; however, this section shall be subject

---

**2.** Tr., May 20, 2015, hearing, pp. 7-8.

to the provisions of Section 178 of Title 15 [3] of the Oklahoma Statutes.

¶ 23 Boulware's establishment of the accounts to be paid to the Berryhill children as beneficiaries is evidence of his gift of these funds to them on his death. Grant tried to change the beneficiary designation, but TFCU refused to allow it. Because Grant could not change the beneficiaries, he admittedly transferred $ 95,291.87 to an account in his name.

¶ 24 "The whole theory of guardianships is to protect the ward during his period of incapacity to protect himself." *Oyama v. California*, 332 U.S. 633, 643-44, 68 S.Ct. 269, 274, 92 L.Ed. 249 (1948). "A guardian is a person appointed by the court to take care of the person or property of another." 30 O.S. 2011 1-105; *see also Gomes v. Hameed*, 2008 OK 3, ¶22, 184 P.3d 479. A guardian of property acts as a fiduciary and must perform diligently and in good faith. 30 O.S.2011 1-121(B). A guardian must keep his or her ward's property safe. 30 O.S.2011 1-121(A).

¶ 25 The Supreme Court in *In re Conservatorship of Spindle*, 1986 OK 65, 733 P.2d 388, gave the following succinct analysis of gifts from a ward to a guardian:

In *Lindsay v. Gibson*, [ 635 P.2d 331 (1981) ] this Court relied upon the case of *Daniel v. Tolon* [1916 OK 446, 157 P. 756], for the proposition that a gift made by the ward to the conservator during the term of the conservatorship was absolutely void. In *Daniel* this Court had found that a transaction between a guardian and his minor ward, after the ward had reached majority, was voidable during the time the influence arising from the relationship of guardian and ward continued. In that case the evidence of overreaching and abuse of influence by the guardian was abundant. We went on in *Daniel* to state that any transaction between the guardian and ward by which the guardian benefits during the period of influence is presumptively invalid. However, it was also clearly stated that this presumption, while weighty, is rebuttable by sufficient proof.

Upon reconsideration of *Daniel* we interpret the holding there to be that the presumption of invalidity regarding dealings between a guardian and ward continues past the time when the legal relationship may end and extends as long as the relationship of influence by the guardian and dependence by the ward continues to exist. Although the presumption is great, it does not automatically invalidate any gift or transaction. *It is this presumption that is in operation at all times during the existence of a legal fiduciary relationship and past that time as long as residual influence continues to flow from the former relationship. Thus, at all times, a transaction may be voidable, but it is not automatically void.*

*Id.* ¶¶7-8 (footnotes omitted and emphasis added).

¶ 26 If we were to conclude that the transfer of money from one account to another was a gift to Grant, we would have to presume, based on the fiduciary relationship, that the gift was invalid, and Grant would then be required to convince the court otherwise to rebut the presumption. We see no basis on which to find the trial court abused its discretion either in finding no gift was made or in concluding Grant failed to overcome the presumption of invalidity. The only evidence in support of Grant's gift argument is his testimony; there is no other corroborating evidence of a gift from Boulware to Grant. The evidence shows Grant as guardian took funds from an account in his ward's name and placed them in an account solely in his own name. It is the trial court's duty to weigh the evidence, determine the witnesses' credibility, and decide issues of fact. *See Gowens v. Barstow*, 2015 OK 85, ¶26, 364 P.3d 644. It was well within the trial court's purview to accept or reject Grant's testimony.

¶ 27 Arlene Gregg testified that Boulware told her that he wanted to leave BLB and CLB $ 10,000 each. Gregg stated Boulware was capable of managing his own affairs and "[h]e didn't have anyone speak for him" because "[h]e spoke for himself." She further

3. Title 15 O.S.2011 178 addresses, "Providing Death Benefits—Contracts of Designating For-mer Spouse as Beneficiary—Effect of Divorce or Annulment," which is not at issue here.

testified Boulware "knew how to change his beneficiary on the payable on death account" because he had done it before.

¶ 28 The evidence before the trial court was simply that Grant took a large sum of money from Boulware's account and placed it in his own account. There was evidence that, if Boulware had wanted to change the beneficiary on the account, he knew how to accomplish that. Boulware did not do so. Other than Grant's testimony, there is no evidence that Boulware instructed him to transfer the money to Grant's account.

¶ 29 If believed by the trial court, the evidence clearly establishes that Grant improperly converted funds belonging to Boulware. As weighed by the trial court, the funds belonged in the accounts listing BLB and CLB as beneficiaries and they are the rightful owners of the accounts. It is hard to see how we could reach the conclusion, as Grant urges, that the trial court's decision is against the clear weight of the evidence.

¶ 30 Grant next argues the trial court cannot make an award to minors. Title 6 O.S.2011 901(A), however, clearly allows a participant in a payable on death account to be a minor.

¶ 31 Grant's final argument is that the TFCU account was part of the residuary estate, which Boulware left to Grant in his will. As 901 makes clear, the payable on death account is a contract between TFCU and "the last surviving owner of the account." The account funds passed directly to BLB and CLB outside the will. *See, e.g., In re Estate of Fields*, 2002 OK CIV APP 14, ¶¶11-12, 46 P.3d 176 (finding 901 changed earlier case law "that a payable on death designation did not meet the requirements for a testamentary disposition or of a gift" and 901 now "authorizes payable on death designations for bank accounts"). These funds are not part of Boulware's probate estate.

¶ 32 None of the arguments presented for reversal of the trial court's decision persuades us that there was an incorrect interpretation or application of the law or that it resulted from an abuse of discretion in weighing the evidence.

## CONCLUSION

¶ 33 Finding no error or abuse of discretion, we affirm the trial court's decision.

¶ 34 **AFFIRMED.**

GOODMAN, C.J., and FISCHER, J., concur.